United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 9, 1997 Decided December 16, 1997 

 No. 96-7187

 James H. Neal, 

 Appellant

 v.

 District of Columbia and 

 John Lattimore, 

 Appellees

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 94cv01528)

 Daniel M. Schember argued the causes and filed the briefs 
for appellant. Alake Johnson-Ford entered an appearance.

 Mary L. Wilson, Assistant Corporation Counsel, argued 
the cause for the District of Columbia, with whom Jo Anne 
Robinson, Interim Corporation Counsel at the time the brief 


was filed, and Charles L. Reischel, Deputy Corporation Coun-
sel, were on the brief.

 Jonathan J. Frankel argued the cause for amicus curiae 
American Civil Liberties Union of the National Capital Area, 
with whom Stephen H. Sachs and Arthur B. Spitzer were on 
the brief.

 Before: Wald, Henderson and Garland, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: This is a companion case to Brown v. 
Plaut, No. 96-7027 (D.C. Cir. Dec. 16, 1997). Because our 
opinion in Brown addresses many of the same issues raised in 
this case, we will make frequent reference to that opinion.

 Plaintiff James H. Neal ("Neal") was an inmate at the 
District of Columbia's (the "District's") prison at Lorton 
during all times relevant to this action. He seeks to recover 
damages from the District for holding him against his wishes 
and without due process in "voluntary protective custody," a 
regime of specially restricted custody for prisoners whose 
personal safety is in danger, for a period of six months. The 
district court dismissed Neal's action for reasons which we 
find are not persuasive; the District argues nonetheless this 
dismissal should be affirmed. We find that, under the analy-
sis mandated by Sandin v. Conner, 515 U.S. 472 (1995), Neal 
had no liberty interest in remaining free of the special 
conditions of detention imposed upon him, and therefore 
affirm the dismissal.

 I. Background

 Neal was convicted in 1987 in D.C. Superior Court of a 
number of offenses, including multiple counts of robbery, and 
sentenced to 49 to 147 years' imprisonment. He was initially 
placed at Lorton, then transferred to the federal prison in 
Leavenworth, Kansas, and later transferred back to Lorton in 
March 1992. The federal Bureau of Prisons transfer forms 
stated that Neal had a significant history of violence (he had 
allegedly tried to choke a prison guard) and that he should be 


considered an escape risk based on the length of his sentence. 
Accordingly, Neal was placed at Lorton's Maximum Security 
Facility, a decision that Neal says in a declaration filed in this 
action that he did not oppose. On March 31, 1992, at his 
initial hearing for housing classification at the Maximum 
Security Facility, Neal asked to be placed in voluntary protec-
tive custody to allow him to "become acquainted with the 
conditions and routine" at the facility. Prison officials 
obliged, and placed him in voluntary protective custody in 
Cellblock 1 of the Maximum Security Facility.

 Voluntary protective custody is one species of administra-
tive segregation; the other major category is involuntary 
protective custody, which is reserved for prisoners who pres-
ent an escape risk or who pose a danger to themselves or 
others. D.C. Mun. Regs. tit. 28, ss 521.4, 521.10, 521.11 
(1987).1 Prison regulations require that all placements in 
administrative segregation be reviewed every thirty days. 
Id., s 527.1. Neal was scheduled for a review of his housing 
placement on April 30. When that review did not occur, and 
no other review was scheduled, he submitted written requests 
for a review in October and November 1992. On December 
1, 1992, he submitted a written request for "placement in 
general population." On March 24, 1993, the Classification 
Board, charged with reviewing prisoners' custody levels, rec-
ommended that Neal be moved to medium security custody, 
but, for reasons unknown, this recommendation was never 
implemented. Neal wrote letters on March 29 and April 11, 
1993, complaining that he had not received appropriate re-
views of his placement in protective custody, and asserting 
that he wished to be moved to the general population at the 
Maximum Security Facility. On June 21, 1993, Neal was 
stabbed, and removed from the prison to an outside hospital. 
On his return to the prison, Neal voluntarily entered protec-
tive custody for a time, and then was returned to the general 
population of the Maximum Security Facility.

 Neal filed a pro se complaint on July 14, 1994, claiming that 
the District's failure to release him from protective custody 

__________
 1 Administrative segregation may also be used to hold an inmate 
prior to a housing hearing or adjustment hearing. Id., s 521.2.


for six months violated the Due Process Clause and the D.C. 
regulations. (These regulations are referred to by the parties 
by the name of the statute approving them, the Lorton 
Regulations Approval Act ("LRAA").) The District filed a 
motion to dismiss or in the alternative for summary judgment 
on a number of grounds, one of which was that the LRAA did 
not create a private right of action. The district court denied 
the motion on all counts. It noted, however, that the question 
of whether the LRAA created a private right of action was a 
complex one, and requested further briefing.

 While Neal's case was pending, the Supreme Court decided 
Sandin v. Conner, 515 U.S. 472 (1995), finding that state laws 
and regulations governing prisons may only create a liberty 
interest for due process purposes if the alleged deprivation 
constitutes "atypical and significant hardship." Id. at 484. 
The parties filed supplemental pleadings as to Sandin's appli-
cation to Neal's case, and the district court found that, on the 
basis of a comparison between conditions in protective custo-
dy and those in the general population at the Maximum 
Security Facility, the conditions Neal had experienced in 
protective custody did amount to an atypical and significant 
hardship.

 The district court then issued a memorandum deciding the 
LRAA question. It concluded that the question of whether 
the LRAA gives rise to a private cause of action was "com-
plex" and that no court to date had awarded damages based 
on an LRAA violation. The district court stated that Neal 
had conceded that, absent the LRAA, he would not be able to 
bring a section 1983 action. It then found that comity 
dictated that the District of Columbia's courts be allowed to 
decide whether the LRAA creates a private right of action in 
the first instance, and dismissed Neal's entire suit. See Neal 
v. District of Columbia, 931 F. Supp. 16, 17 (D.D.C. 1996). 
Neal appeals from this order.

 II. Analysis 

 On appeal, the District presents a number of arguments for 
affirming the district court's decision to dismiss Neal's section 


1983 action. The most serious is that, under Sandin, 515 
U.S. 472 (1995), Neal did not have a liberty interest in 
avoiding his placement in administrative segregation. Be-
cause we agree with this one, we do not reach the others.

 Before addressing Sandin, however, we briefly discuss the 
reasons given by the district court for its decision. The 
district court mistakenly assumed that, if a state law does not 
create a private cause of action, then it cannot support an 
action under section 1983. But to bring an action under 
section 1983 for a violation of the Due Process Clause, Neal 
need only establish that he has been deprived of a protected 
interest (here, a liberty interest) without due process. Under 
the law as it stood before Sandin was decided, Neal could 
have demonstrated this by showing that the relevant state 
laws and regulations sufficiently constrained the discretion of 
state officials to establish the existence of a liberty interest. 
See Brown, slip op. at 9. Since Sandin, Neal must show that 
he has been subjected to an "atypical and significant hardship 
... in relation to the ordinary incidents of prison life." 
Sandin, 515 U.S. at 484.2 At neither time, however, did the 
test for the existence of a liberty interest turn on whether the 
relevant state laws create a private cause of action.

 We now turn to Sandin. In the companion Brown case, we 
concluded that the application of Sandin raised difficult ques-
tions which we thought it unnecessary to answer. In this 
case, we need not reach those questions, as Neal cannot 
establish the existence of a liberty interest under any plausi-
ble reading of Sandin.

 Neal avers that he involuntarily spent six months in "volun-
tary" protective custody, beginning at the point he asked in 
writing on December 1, 1992, to leave voluntary protective 
custody, and ending when he left the administrative segrega-

__________
 2 As we note in Brown, after Sandin Neal might still need also to 
show that relevant state laws and regulations contain language 
constraining the discretion of state officials. See Brown, slip op. at 
12.


tion unit on June 21, 1993, for the hospital.3 In Cellblock 1, 
where Neal was held during that period, he was allowed to 
leave his cell for nine hours a day three days a week, for six 
and a half hours (or longer if he had a visitor) for two days a 
week, and for five and six hours respectively on the remaining 
two days. He was allowed a total of eight hours a week 
outdoors, in a small courtyard. He did not have easy access 
to the gym, mailroom, law library, or medical unit (although 
other arrangements were made for provision of these ser-
vices), and he could not work at a prison job.

 Neal contends that the appropriate standard for determin-
ing whether the deprivation he suffered was "atypical and 
significant" is to compare his circumstances to those of the 
general prison population from which he was removed. Cf. 
Brown, slip op. at 10-12. Even by that standard, however, 
Neal fails to meet the Sandin test. Had he remained a part 
of the general population at the Maximum Security Facility, 
Neal would have received at least 141/2 hours a day of out-of-
cell time, and 171/2 hours on Fridays and Saturdays. He 
would have been allowed 14 hours a week outdoors, some 22 
hours a week of work, and easy access to the gym, mailroom, 
law library, and medical unit. His placement in administra-
tive segregation thus cost him approximately half of his out-
of-cell time, eliminated his access to employment, and re-
stricted his access to prison facilities, all over a six-month 
period. This deprivation is comparable to that at issue in 
Sandin; although the deprivation in Sandin lasted only 
thirty days, it was considerably more severe, involving (for 
instance) a reduction from between eight and twelve hours a 
day of out-of-cell time to fifty minutes. Sandin, 515 U.S. at 

__________
 3 The LRAA states that a prisoner in voluntary protective custo-
dy who makes a written request to leave that status "shall be 
released at once from protective custody." D.C. Mun. Regs. tit. 28, 
s 521.12 (1987). The LRAA permits an inmate who asks to leave 
voluntary protective custody to be placed instead in involuntary 
protective custody if findings are made that the inmate is a danger 
to himself or others or presents an escape risk. See id., ss 521.4, 
521.12. The District does not contend that any such findings were 
made.


486 & n.8. It follows that, even under the reading of Sandin 
he himself proposes, Neal had no liberty interest in avoiding 
his treatment at the hands of Lorton's authorities, and so has 
no claim under the Due Process Clause. We therefore affirm 
the dismissal of Neal's due process claim.4

 There remains Neal's claim under the LRAA. Although it 
is unclear on what basis the district court originally dismissed 
this claim, Neal concedes that, if the district court's dismissal 
of his section 1983 claim was proper, it would also have been 
proper for the district court to dismiss his claim under D.C. 
law for lack of jurisdiction. See 28 U.S.C. s 1367(c)(3).5 We 
thus affirm the district court's dismissal of this claim.

 The decision of the district court is therefore affirmed.

 So ordered.

__________
 4 Although we find that the District's alleged treatment of Neal 
does not rise to the level of a violation of the Constitution, that does 
not mean that we endorse it. We do not know from the record 
whether the District had any valid reason for keeping Neal for six 
months in "voluntary" protective custody against his will, and why it 
denied him any process at all.

 5 Neal may, of course, pursue his LRAA claim in the courts of the 
District of Columbia. Dismissals for lack of supplemental jurisdic-
tion are without prejudice, and the limitations period for a claim 
dismissed for this reason is tolled "while the claim is pending and 
for a period of 30 days after it is dismissed unless State law 
provides for a longer tolling period." 28 U.S.C. s 1367(d).